# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### AT BECKLEY

THE CHARLESTON BUILDING AND
CONSTRUCTION TRADES COUNCIL, AFL-CIO and
THE WEST VIRGINIA STATE BUILDING AND
CONSTRUCTION TRADES COUNCIL, AFL-CIO,

        Plaintiffs,

v.                                    CIVIL ACTION NO.  5:19-cv-00827

BEECH RIDGE ENERGY, II, LLC and
INVENERGY, LLC,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Defendant Beech Ridge Energy, II LLC's ("Beech Ridge II") Motion to Compel Arbitration and to Stay the Proceedings [Doc. 8], filed December 6, 2019.

### I.

On February 13, 2006, Beech Ridge Energy, LLC  and the Charleston Building and Construction Trades Council ("Building Trades") entered into a memorandum agreement (the "Agreement") regarding the construction of the Beech Ridge Wind Farm and related facilities (the "Facility") in Greenbrier County [Doc. 9-1].[1] The Agreement provides that Beech Ridge will select an engineering procurement and construction contractor ("EPC Contractor") to construct the Facility and shall require the EPC Contractor to enter into a project labor agreement with Building Trades. The Agreement allows for alternative agreements between the EPC Contractor and specific

---

[1]     The parties agree that Beech Ridge II is bound by the terms of the Agreement [*See* Doc. 1-1 at 8–10; Doc. 9 at 1].

international unions associated with Building Trades. The Agreement provides that "any jurisdictional disputes shall be resolved by the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry" (the "Plan") [*Id.* at 2]. The Plan is a separate agreement approved by the Building and Construction Trades Department, AFL-CIO [Doc. 9-2]. It requires a final and binding arbitration should the parties be unable to resolve the dispute directly [*Id.* at Art. VI].

On October 15, 2019, Building Trades instituted an action in the Circuit Court of Greenbrier County [Doc. 1-1]. The Complaint alleges that Beech Ridge II breached the Agreement and that members of Building Trades lost employment as a result [Doc. 1-1 at ¶ 12]. Beech Ridge II moved to compel arbitration pursuant to the Agreement's mandate that "any jurisdictional disputes shall be resolved by the Plan . . . " [Doc. 9-1 at 2]. In opposition, Building Trades contends that the parties did not agree to arbitrate this dispute inasmuch as the Complaint does not trigger the arbitration provision.

## II.

The Federal Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts apply a "strong federal policy in favor of enforcing arbitration agreements." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666 (4th Cir. 2016) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

"[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)). In the context of labor disputes, "[a]n order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)).

"In the Fourth Circuit, a litigant can compel arbitration if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1992)).

### III.

The parties do not dispute that a controversy exists between them, that the transaction bears a relationship to interstate commerce, that Building Trades refused to arbitrate the dispute, or that the Agreement is generally enforceable. At issue is whether the Agreement's arbitration provision "purports to cover the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1992)). As noted, the Agreement provides, "any jurisdictional disputes shall be resolved by the Plan" [Doc. 9-1 at 2]. The parties concur that "jurisdiction," in this context, relates to the assignment of work [Doc. 9 at 7 ("[I]n the building and construction industries, jurisdictional disputes are essentially disputes regarding the proper assignment of work"); Doc. 11 at 2 (defining jurisdiction as "work assignments")].

The Complaint alleges that Beech Ridge II breached the Agreement in the following ways:

- failing to negotiate and enter into a [project labor agreement] for the construction of the Facility;

- Contracting or subcontracting with a company or companies that have failed to: perform all work on the Facility in compliance with the MOA; enter into a PLA with the Building Trades; or utilize an 'alternative agreement' with a union that is affiliated with the Charleston Building Trades Council, AFL-CIO for traditional craft jurisdiction;

- contracting with a company or companies that have failed to hold pre-job conference(s) with the Charleston Building Trades Council, AFL-CIO prior to the commencement of work; and

- contracting or subcontracting with a company or companies that fail to recognize [the Plan] for resolution of all jurisdictional disputes.

[Doc. 1-1 at ¶ 12].

Building Trades contends that several of these allegations are unrelated to the assignment of work and that the dispute accordingly falls outside the scope of the arbitration provision. That is not the case. For example, the sole allegation of damages in the Complaint pertains to lost employment in connection with the project. Specifically, the Complaint alleges that "[a]s a result of" Beech Ridge II's breaches, Building Trades and its "members have lost employment and the wages, health and pension and other benefits related thereto to which they were entitled" [Doc. 1-1 at ¶ 13]. The locus of this litigation is the assignment of work. Moreover, were there any doubt on that matter, the Court is mindful of the mandate that "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569.

Accordingly, the Court concludes the matters in controversy in this dispute fall- within the scope of the Agreement's arbitration provision.

**IV.**

The Court therefore **GRANTS** Beech Ridge II's Motion to Compel Arbitration and to Stay the Proceedings **[Doc. 8]**. The action is **STAYED** pending arbitration. In light of the Building Trades' First Amended Complaint [Doc. 13], Defendant Invenergy, LLC's, previously filed Motion to Dismiss **[Doc. 6]** is **DENIED** as moot. The parties are directed to file a status report on April 20, 2020, and every sixty (60) days thereafter. Upon a final decision in arbitration, the parties are directed to file a status report in this action.

The Court directs the Clerk to transmit a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented party.

ENTERED:    March 10, 2020

Frank W. Volk
United States District Judge